MARGARET REUTHER, FREDERICK REUTHER, EDNA REUTHER and LORETTA KIRK, complainants-respondents,

*v.*

FIDELITY UNION TRUST COMPANY, a corporation of New Jersey, defendant-appellant, and FREDERICK REUTHER, JR., and ROBERT REUTHER, defendants-respondents.

[Submitted February term, 1934.   Decided May 4th, 1934.]

On appeal from a decree of the court of chancery advised by Vice-Chancellor Fielder, who filed the following opinion:

"June 25th, 1924, complainant Margaret Reuther entered into a trust agreement with defendant Fidelity Union Trust Company under which the income from certain securities deposited with the trust company as trustee, is to be applied to pay premiums on an insurance policy for $100,000 issued on the life of her husband, Frederick Reuther, until his death. The policy is payable to the trust company and under the further terms of the trust, the proceeds of the policy and said securities are to form a fund from which the trust company is to pay the income to Mrs. Reuther for life, if she survives her husband and thereafter to her children for life and upon their death to pay the *corpus* as the children by will may direct, or in default of will, to the issue of the assured; or in default of will and such issue, then to Frank Reuther, brother of the assured, or if he be dead, then to his issue.

"The trust agreement is the result of a life insurance plan or scheme 'sold' by an insurance agent to Reuther, who at that time was so successful in operating a foundry business that he had accumulated and invested about $50,000. Business was then good and beside his securities Reuther owned

an interest in the foundry and his own home. When the insurance agent put the plan before Reuther it appealed to him as a good way to make provision for his wife and children after his death and he accepted it. Mr. Reuther and a representative of the trust company then discussed the idea, and a draft of agreement, prepared by counsel for the trust company was submitted to Reuther, approved by him and was rewritten for execution. All conferences leading up to the preparation of the trust agreement were between the insurance agent, the representative of the trust company and Reuther; the latter's wife had no part therein. She was merely informed by her husband that he was arranging a life insurance plan for the benefit of herself and their children. When the final draft of the agreement was completed, it was taken to Mrs. Reuther by a representative of the trust company, who read it to her from beginning to end and she then signed it. All the securities named in the agreement were Mr. Reuther's and were deposited by him with the trust company; they represented practically all his savings. Mrs. Reuther had no property of her own other than her interest in their home.

"Came the general business depression commencing in 1929 and what it did to thousands of business men throughout the country during the following years, it did to Reuther and his business. He lost the balance of his savings and was reduced to penury, except that he still owns his home but he may lose that too, because he is unable to pay taxes thereon. The income received by the trustee from the trust securities has dwindled so that it is just about sufficient to pay annual insurance premiums and should the income fall below the amount of the premium, the trust agreement authorizes the trustee to sell securities to make up the deficit, so that Reuther is in danger of losing a portion of such securities. Because of his solicitude for his wife and children, Reuther made ample provision for them after his death but he impoverished himself so that he is unable to properly care for them during his lifetime. His wife, who is the donor named in the trust agreement and he, who is the real donor, now desire to revoke the agreement and have the securities restored to them to use

for pressing family necessities. The parties beneficially interested under the agreement are their four children, two of whom are under age; Reuther's brother, Frank Reuther, and his six children, all of whom are of age. The bill of complaint is filed by Mr. and Mrs. Reuther and their two adult children and names as defendants the trust company, the two minors, Frank Reuther and his six children. The trust company filed an answer and an answer was filed for the guardian *ad litem* of the infant defendants. No appearance has been made for Frank Reuther and his children and I take it that they do not oppose granting the prayer of the bill. While the trust company answers and defends, I gather that it has no special interest in the outcome of the suit but wants its day in court to present fully its part in the transaction. Were all the parties in interest adults, I have no doubt that the trust company would be willing to cancel the trust agreement upon the consent of all parties. The court is therefore mainly concerned in seeing that the interests of the two infant defendants are fully protected. If the complainants have equitable rights which are superior to the rights of the infants, the complainants will not be deprived of their rights merely because of the infancy of those defendants. *Garnsey* v. *Mundy, 24 N. J. Eq. 243; In re Shreve, 87 N. J. Eq. 7; affirmed, Ibid. 710.*

"There can be no doubt but that the trust agreement embodies all the details which were discussed between Reuther and the trust company's representative. It is carefully and fairly drawn, contains all that Reuther stated should be included therein (and no more) and expresses clearly the disposition Reuther then wanted made of his securities and of the proceeds of his life insurance after his death, but it is entirely silent as to whether or not it is revocable. It expresses a voluntary gift, made without consideration moving from the beneficiaries thereunder, and there is no evidence that any of those beneficiaries have acted upon or changed their position by reason thereof. It was made by Mrs. Reuther, or in her name because Reuther placed confidence in the trust company and the insurance agent and was induced

by their well meant advice to enter into it in the form they suggested. Mr. and Mrs. Reuther did not discuss the proposition with anyone else and they had no advice whatever as to the prudence of placing their savings beyond their reach, in case of business reverses, when those savings might be their only means of support. The evidence satisfies me that Mrs. Reuther not only did not understand the effect of the agreement but that she was actually unacquainted with its provisions. True, it was read to her before she signed it, but I am certain she could not grasp the full meaning and effect of a four-page special form of agreement such as this. He who read it to her performed his duty by so doing, but he made no explanation to her of the legal effect of what he had read. He relied on her husband's supposed knowledge of all the consequences which would follow the execution of the agreement. She signed because her husband asked her to and no one told her or him that it might be impossible to undo her deed. The insurance agent and the trust company's representative were the only persons who discussed the provisions of the agreement with Reuther and both are doubtful as to whether or not they told him it was an irrevocable act. Considering their doubt, it seems certain that no definite information on that point was imparted to him, or that its importance was stressed and Reuther is positive that the subject was not discussed at all. He read the agreement before his wife executed it and was satisfied that it contained provisions which he understood and so it did. While he probably understood all that was contained therein, he did not realize the practical effect and consequences which might flow from things not stated, such as the omission of a clause giving Mrs. Reuther the definite right to revoke. He was then forty-three years old, in good health, with twenty years or more of life ahead of him. Had he been told that no matter what might happen in the years to come, he could not revoke the agreement in the absence of a clause granting that right, I feel sure that he would have insisted upon the insertion of such a clause, or would have required full explanation of reasons for its omission. If it should be held that without such a

clause, the agreement is irrevocable, then the gift thereby made was unwise and improvident and should be set aside, because it divested them of practically all their savings and put it out of their power to resort to any fund with which to tide themselves over lean years which might result as a natural business risk and which in fact did come to Reuther. Taking into consideration all the facts and circumstances and under the authority of *Garnsey* v. *Mundy, supra; Mulock* v. *Mulock, 31 N. J. Eq. 594; White* v. *White, 60 N. J. Eq. 104; Smith* v. *Boyd, 61 N. J. Eq. 175; Grant* v. *Baird, Ibid. 389,* I conclude that the complainants should have the relief they seek. It seems to me that the infant defendants will be served by setting the agreement aside. Their interest thereunder cannot accrue unless they survive their father and mother and they may not live to take and should they take, it would be at a time when they are of age and able to fend for themselves. They need now, during their infancy, the support and care which their parents will be better able to provide, if the parents have funds to use for the purpose."

*Mr. Frank W. Hastings,* for the complainants-respondents.

*Mr. Francis Lafferty,* for the defendant-appellant.

PER CURIAM.

We affirm the decree below and, in the main, for the reasons stated by the vice-chancellor in the foregoing opinion. We observe, however, that it was noted upon the record, by consent, that Frank Reuther is alive; that he has six children, all of whom are alive and all of whom are of age; and that appearance was entered for all. Wherefore these interests appear and do not contest. We remark further that that which, in our opinion, weighs the scales down in favor of a setting aside of the trust agreement is that that instrument is essentially one for the welfare of the family and, with that in mind, that it is improvident as to the minors—the only persons in immediate beneficial interest who do not, and cannot, pray for an annulment. It is of vastly more importance

that the necessaries of life—roof, food, clothing and education—be provided for them now than that they should have patrimony at some future time when in all probability they will be able, if properly nurtured, to care for themselves. It would be of small advantage to them to be marred in adolescence that they might have substance later. That would be quite foreign to the underlying purpose of the agreement.

The decree below will be affirmed.

*For affirmance*—THE CHIEF-JUSTICE, TRENCHARD, LLOYD, CASE, BODINE, DONGES, HEHER, PERSKIE, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, DILL, JJ.    14.

*For reversal*—PARKER, J.    1.