The three life tenants of the residuary trust created by the will of their mother, Mrs. Eliza Smith, pray that the trustee be directed to make advancements out of corpus. The residuary clause of the will reads as follows:
"All the rest, residue and remainder of my estate, of every character and description, I give, devise and bequeath to my executors hereinafter named, in trust, however, to invest the same and keep the same invested and to pay the net income arising therefrom, as follows:
"One-third (1-3) thereof to my daughter, Margaret Marion Hughes, during her lifetime;
"One-third (1-3) thereof to my daughter, Ethel Cecelia Ford, during her lifetime; and *Page 503 
"One-third (1-3) thereof to my son, William James Talbot Smith, during his lifetime.
"Upon the death of my daughter, Margaret Marion Hughes, leaving issue, I direct that the principal of one-third of the residue of my estate shall be paid to her issue per stirpes; in default of issue said one-third of the principal of the residue of my estate shall be paid to her husband, Thomas Cecil Hughes, to be his absolute property. Should my said daughter die without issue and without her said husband surviving, then I direct that one-half of said one-third of the residue of my estate shall be added to the share of my estate set aside for my daughter, Ethel Cecelia Ford and disposed of therewith, and the other one-half of said one-third of the residue of my estate shall be added to the share of my estate set aside for my son, William James Talbot Smith, and disposed of therewith.
"Upon the respective deaths of my daughter, Ethel Cecelia Ford, and my son, William James Talbot Smith, leaving issue, one-third of said residue of my estate shall be divided among his or her issue, per stirpes; in default of issue, his or her share shall be divided among my surviving children and their issue, perstirpes and not per capita."
Mrs. Smith died May 21st, 1934, leaving a residuary estate of about $50,000.
When the will was made in 1929, the testatrix' daughter's husband, Mr. Hughes, was earning an income sufficient to support himself and his wife in comfort. But he died early last year, leaving no estate except $3,000 life insurance and his home in Maplewood, which is encumbered by a mortgage for $4,000. Meanwhile, Mrs. Hughes had developed epilepsy. She is now in a nursing home in Montclair where she pays $40 a week for board and care. The proceeds of the insurance are almost exhausted; the Maplewood house is presently unsaleable and is unoccupied, although her brother and sister have tried to find a tenant; her only income is derived from the trust, about $690 a year. Mrs. Hughes, who is now fifty-seven years old, is worried and her condition aggravated by fear that she will have to be placed in a public institution. She prays that the trustee be directed to pay out of corpus sufficient to keep her in the private nursing home in Montclair where she now is.
Shortly after Mrs. Smith made her will, she had a stroke and it is quite likely that she never realized Mrs. Hughes' condition of ill health or the desperate need in which she would soon find herself. *Page 504 
Mrs. Hughes has no children. By the will, she has a life interest in one-third of the residuary estate with remainder to her brother and sister for life, then to their issue. Eleanor Smith, aged twenty-four, and Mrs. Ford's two infant children are the presumptive remaindermen after the life estates. But their estates may be defeated by certain contingencies and are subject to being opened to let in children of Mrs. Ford or Mr. Smith, hereafter born.
Clearly, to grant the prayer of Mrs. Hughes would give to her property which belongs to others. Her brother, sister and niece, Eleanor, consent, but the infants cannot consent. And there is the very remote possibility that persons not yet born may take an interest.
Our cases fully establish that chancery, in an emergency and for the preservation of the estate and for the benefit of cestuique trust may direct the trustee to deviate from the express provisions of the trust instrument. Price v. Long, 87 N.J. Eq. 578; Pennington v. Metropolitan Museum of Art, 65 N.J. Eq. 11;New Jersey National Bank and Trust Co. v. Lincoln Mortgage,c., Co., 105 N.J. Eq. 557. See notes 46 L.R.A. (N.S.) 43;39 A.L.R. 40. But the court cannot order the trustee to pay to one cestui, part of a fund which the testator has established for the benefit of others. In re Lucey, 98 N.J. Eq. 314; ReDavison, 6 Paige 136; 1 Restatement, Trusts § 168d. InReuther v. Fidelity Union Trust Co., 116 N.J. Eq. 81, cited by complainants, no advance to a beneficiary was authorized, but the whole gift in trust was avoided on the ground of mistake and improvidence.
Counsel further argue that the prime purpose of testatrix, in regard to one-third of the residuary estate, was the well-being of Mrs. Hughes, that the disposal of the remainder was a minor consideration and that the corpus should be used to support Mrs. Hughes in order to effectuate the dominant intention of testatrix. Trust Company of New Jersey v. Glunz, 119 N.J. Eq. 73; Longwith v. Riggs, 123 Ill. 258; 14 N.E. Rep. 840. I have no doubt that were Mrs. Smith here, she would devote as much of her estate as might be necessary to care for her child most in need, but the fact *Page 505 
remains that she gave Mrs. Hughes only a life interest. I cannot rewrite the will.
The other two life tenants make similar applications and likewise show a present need for the corpus. The rules already discussed apply here.
With deep regret, I conclude that the bill must be dismissed.