MEMORANDUM OF DECISION
JANE W. FREEMAN, Judge.
The Petitioner, Scott Quidgeon, has petitioned the Court to authorize the distribution of per capita funds from the trusts of his two minor children, T.T. and T.T. The Mohegan Tribe of Indians of Connecticut (“Tribe”) has filed an Answer stating that it takes no position on the Petition.
The Court has jurisdiction of the parties and the subject matter. The Petitioner and the two minor children are members of the Tribe (Pleading # 106) and the Tribe is a party to the proceeding. The Court has subject matter jurisdiction pursuant to the Amended and Restated Ordinance of the Mohegan Tribe of Indians of Connecticut Establishing The Gaming Revenue Allocation Plan, Ordinance No.2001-08 (“the Ordinance”). Under Section III.H.5. of the Ordinance, the Court may authorize the trustee or trustees of trusts established for minor children to make distributions to the parents or guardians of the trust beneficiaries, for the purposes and subject to the limitations set forth therein.
I. The Amended and Restated Ordinance of the Mohegan Tribe of Indians of Connecticut Establishing The Gaming Revenue Allocation Rian, Ordinance NoJOOJ-OH
As part of its Gaming Revenue Allocation Plan (“Plan”) the Tribe has made *458 provisions for the future welfare of its minor tribal members by contributing their per capita benefits to grantor trusts owned by the Tribe “to be invested, with income on trust principal to be accumulated, for future distribution to those minor tribal members.” M.T.O.2001-0N, Section I. While the Plan states that the Tribe shall provide for the future welfare of its minor tribal members, tribal member parents are encouraged to pay for the immediate living needs of their children.
The tribe also retains the inherent sovereign right to determine the best interests of its minor tribal members by providing for their future welfare by contributing per capita benefits to grantor trusts owned by the Tribe to be invested, with income earned on trust principal to be accumulated, for future distribution to those minor tribal members. The Tribe shall provide for the future of minors while encouraging tribal member parents to provide for the immediate living needs of them children as is their responsibility. All assets accumulated in the grantor trusts for future distribution to a minor tribal member shall be distributed at such time as the minor reaches the age of eighteen (18) and not before, except in the limited extraordinary circumstances provided in Section III.F.5 [1] (emphasis added).
M.T.O. No.2001-08, Section I.
The limited extraordinary circumstances under wdiich distributions may be made from trusts for the benefit of minor tribal members are as follows:
Prior to the time the beneficiary reaches the age of eighteen (18), the Tribal Court may, after careful consideration of the facts, authorize the trustee or trustees of the trust or trusts to make distri-buttons from the trust or trusts to the parents or guardians of the beneficiary only to defray unreimbursed medical expenses or only as necessary to defray expenses for health, education, or welfare incurred by or on behalf of the beneficiary as established by such parents or guardians. Any request for such disbursements shall include a detailed budget of monies necessary for essential living expenses to include health, education, or welfare costs and only upon presentment of a detailed justification for such essential living needs. The petitioning parent or guardian must show, by a preponderance of the evidence, that the amount requested to defray unreim-bursed medical expenses or expenses for health, education or welfare, are reasonable and necessary. The Tribal Court may also require that the petitioning parent or guardian submit receipts of expenditures made from funds disbursed hereunder before any future disbursements are made (emphasis added).
M.T.0.2001-08, Section III.H.5.
The Tribal Council has expressed a clear intent in the Ordinance to limit distributions from grantor trusts to extraordinary circumstances, where the amounts requested are reasonable and necessary. Further, the Tribal Court is limited to authorizing distributions from trust only where it has made a factual determination that the distributions are “necessary to defray expenses for health, education or welfare incurred by or on behalf of the beneficiary ...” M.T.0.2001-08, Section III.H.5.
“Extraordinary circumstances” are “[a] highly unusual set of facts that are not commonly associated with a particular *459 thing or event.” Black’s Law Dictionary, 7th Ed. “Extraordinary” has been defined as “going beyond what is usual, regular, common or customary ... exceptional to a very marked extent.” Webster’s Third New International Dictionary. “Reasonable” has been defined as “being or remaining within the bounds of reason: not extreme: not excessive”. Id, “Necessary” has been defined as “that cannot be done without: that must be done or had: absolutely required”. Id.
Seidel v. Mohegan Tribe, 1 M.T.C.R 38, 39-40, 6 Am. Tribal Law 449, 2005 WL 6238704 (2005).
II. The Petition and the Facts
The Petitioner has requested the Court to distribute $19,893 from the trust of each minor child, for a total distribution of $39,785. The petition is couched in terms of a request for permission to “borrow” this amount, with a plan to repay the amounts “borrowed” from the children pri- or to their eighteenth birthdays. The petition includes a list of how the $39,785 would be used (“List”). The Petitioner and his wife contend that the welfare of T.T. and T.T. should be viewed in the context of the financial needs of the entire family. The family home, previously owned by Mrs. Quidgeon, was conveyed to Mi's. Quidgeon’s brother in 2005 and the Petitioner and his wife now rent the home. The family home is currently occupied by the Petitioner, his wife, the wife’s three children from a prior marriage, T.T., T.T. and an unrelated male who previously worked with the Petitioner. The Petitioner is a plumber. His wife, who is a registered nurse, is not currently working outside the home due to medical problems. In 2002 and 2003, the Petitioner and/or Ms wife had significant periods of unemployment. The Petitioner and his wife have significant financial debts which have accumulated both during and since the years of their unemployment. Most of the funds requested would be used to pay existing family debts and to repair or purchase family vehicles. The Petitioner contends that payment of these debts and the repair and acquisition of the vehicles will relieve financial stress in the household and will benefit T.T. and T.T., as well as the rest of the family.
The Petitioner has requested distributions from the minors’ trusts to pay for the following items:
(1) $2,000 to “Repay Social Services Emergency Fund.” In the fall of 2005, the Petitioner took a loan of $2,000 from the Tribe’s Social Services Emergency Fund to pay for a new7 boiler/hot water heater/oil tank for the family home and he continues to make monthly payments to the Tribe to re-pay this loan;
(2) $4,000 to “Return Scott’s truck to service.” The Petitioner has a 1998 pick up truck which is not in service because of needed repairs. He used this vehicle for his transportation to work and also used it for a second job which required him to move large equipment. Currently, the Petitioner’s employer provides him with a company vehicle which Petitioner uses for his transportation to and from work and on the job. Other employees are also provided with company vehicles for similar uses;
(3) $7,000 to “purchase a new/used family vehicle.” The wife currently drives the family vehicle which is in need of repairs but is operational;
(4) $15,000 to “pay debt to Yankee Gas.” The family home had been heated with natural gas but service was discontinued when the Petitioner was unable to: make the required payments on account. Since the termination of gas service, a new oil furnace has been installed and the family *460 home is now heated with oil. The Petitioner and his wife are still experiencing difficulty in paying for heating oil for the family home and have already requested and received emergency fuel assistance from the Tribe;
(5) $1,785 to “pay for pre-school educ. @ Naugatuck YMCA.” T.T. and T.T. are attending this pre-school program for the 2005-2006 school year, three mornings a week. The pre-school program includes educational instruction, sports and arts. The Petitioner and his wife have been paying the tuition in monthly installments;
(6) $1,500 to “finish paying off NEMSI for boiler, water heater and oil tank.” The Petitioner testified that since filing the petition he has re-paid this loan to his employer, NEMSI;
(7) $1,500 to “pay off dental bills.” The wife testified that the dental bills were her bills and the bills of her daughter from a prior marriage; and
(8) $7,000 to “pay off legal debt.”
The Ordinance has no provisions authorizing this Court to permit a parent, guardian or any other person to borrow money Irom a minor’s trust established under the Ordinance. Therefore, to the extent that the Petitioner has requested a loan from the minors’ trusts, such request is denied.
The Court has also considered the petition as if it were a request for distributions from the minors’ trusts, without any repayment obligations. Except for the pre-school tuition in the amount of $1,785, none of the obligations which the Petitioner proposes to pay from the trust distributions were incurred to defray un-reimbursed medical expenses or to defray expenses for health, education or welfare incurred by or on behalf of the beneficiary of each minor’s trust. M.rr.0.2001-08, Section lIi.H.5. The provisions of M.T.O. 2001-08, Section III.H.5 must be narrowly and strictly construed by this Court, to fulfill the clear legislative intent to limit distributions to limited extraordinary circumstances. M.T.0.2001-08, Section I. While the two minor children certainly have secured some collateral benefit from the installation of a new boiler/hot water heater/oil tank in the family home and from the fuel assistance furnished to pay for home heating oil, their trusts should not be used to pay for these household improvements or utilities, which their parents should provide. Although the Petitioner and his wife are experiencing financial difficulties and were not able to pay for the new boiler/hot water heater/oil tank and home heating oil without outside help, they have sought loans and assistance from other appropriate sources. Further, the Petitioner and his wife have the responsibility to provide for their own transportation needs and those of their children. Finally, the Yankee Gas debt, the dental expenses and the legal debt were not expenses for health, education, or welfare incurred by or on behalf of the beneficiary of each minor trust.
The pre-school tuition for 2005— 2006 in the amount of $1,785 is being incurred for the education and welfare of the two minor children and because their parents have limited financial resources, the Court finds that the total amount of $1,785 should be distributed from the minors’ trusts to defray this expense.
III. Conclusion
For the foregoing reasons, it is ordered that the sum of $892.50 be distributed to the Petitioner from the trust of T.T., to defray her 2005-2006 pre-school tuition costs at the Naugatuck YMCA; and it is further ordered that the sum of $892.50 be distributed to the Petitioner from the trust of T.T., to defray her 2005-2006 pre-school *461 tuition costs at the Naugatuck YMCA. The Petitioner shall file receipts for the tuition costs, showing payment in full, with the Clerk of the Court. The Court denies the Petitioner’s remaining requests for distributions of per capita funds from the trusts of T.T. and T.T.

. The extraordinary circumstances under which distributions may be made from grant- or trusts for the benefit of minor tribal members are in Section III.H.5 not in Section IIl.F.S.