MEMORANDUM OF DECISION
JANE W. FREEMAN, Judge.
The Petitioner, Thomas Belisle, Jr., has petitioned the Court to authorize distributions from the grantor trusts established by the Mohegan Tribe (“Tribe”) for the benefit of his two minor children, M.B. and C.B. The Tribe contributes per capita benefits to these trusts for future distribution to minor Tribal members, in order to provide for their future safety and well being. MTC § 2-183(h). The Tribe has filed an Answer stating that it takes no position on the Petition.
The Court has jurisdiction of the parties. The Petitioner and the two minor children are members of the Tribe (Ex.l) and the Tribe is a party to the proceeding. The *345 Court also has subject matter jurisdiction pursuant to the Gaming Revenue Allocation Plan, MTC § 2-181, et. seq. (“Plan”). Under the Plan, the Court may authorize the trustee or trustees of trusts established for minor children to make distributions to the parents or guardians of the trust beneficiaries, for the purposes and subject to the limitations set forth therein. MTC § 2—183(h)(5).
1. The Gaming Revenue Allocation Plan
As part of the Plan, the Tribe has made provisions for the future welfare of its minor tribal members by contributing their per capita benefits to grantor trusts owned by the Tribe “to be invested, with income on trust principal to be accumulated, for future distribution to those minor tribal members.” MTC § 2-181; Rebecca Cloutier, Petitioner, In Re: A.C. (Minor Child), 1 M.T.C.R 50, 6 Am. Tribal Law 461, 2006 WL 6177325 (2006); Scott Quidgeon, Petitioner, In Re: T.T. and T.T. (Minor Children), 1 M.T.C.R 46, 6 Am. Tribal Law 456, 2006 WL 6177326 (2006). The Plan prorides that the Tribe shall provide for the future welfare of its minor tribal members, but tribal member parents are encouraged to pay for the immediate living needs of their children. MTC § 2-181. No distributions may be made from the grantor trusts until the minor is eighteen years old, except in limited extraordinary circumstances.
All assets accumulated in the grantor trusts for future distribution to a minor tribal member shall be distributed at such time as the minor reaches the age of eighteen (18) and not before, except in the limited extraordinary circumstances provided in Subsection 2-183(h)(5) (emphasis added).
MTC § 2-181.
The limited extraordinary circumstances under which distributions may be made from trusts for the benefit of minor tribal members are as follows:
Prior to the time the beneficiary reaches the age of eighteen (18), the Tribal Court may, after Careful consideration of the facts, authorize the trustee or trustees of the trust or trusts to make distributions from the trust or trusts to the parents or guardians of the beneficiary only to defray unreimbursed medical expenses or only as necessary to defray expenses for health, education, or welfare incurred by or on behalf of the beneficiary as established by such parents or guardians. Any request for such disbursements shall include a detailed budget of monies necessary for essential living expenses to include health, education, or welfare costs and only upon presentment of a detailed justification for such essential living needs. The petitioning parent or guardian must show, by a preponderance of the evidence, that the amount requested to defray unreim-bursed medical expenses or expenses for health, education or welfare, are reasonable and necessary. The Tribal Court may also require that the petitioning parent or guardian submit receipts of expenditures made from funds disbursed hereunder before any future disbursements are made (emphasis added).
MTC § 2—183(h)(5); see also Rebecca. Cloutier, Petitioner, In Re: A.C. (Minor Child), supra, 1 M.T.C.R. at 51, 6 Am. Tribal Law at 462, 2006 WL 6177325; Scott Quidgeon, Petitioner, In Re: T.T. and T.T. (Minor Children), supra, 1 M.T.C.R. at 47, 6 Am. Tribal Law at 458, 2006 WL 6177326; Seidel v. Mohegan Tribe, 1 M.T.C.R 38, 39, 6 Am. Tribal Law 449, 450, 2005 WL 6238704 (2005).
The Tribal Council has expressed a clear intent in the Plan to limit distributions from grantor trusts to extraordinary err- *346 cumstances, where the amounts requested are reasonable and necessary. Further, the Tribal Court is limited to authorizing distributions from trust only where it has made a factual determination that the distributions are “necessary to defray expenses for health, education or welfare incurred by or on behalf of the beneficiary ...” MTC § 2—183(h)(5).
“Extraordinary circumstances” are “[a] highly unusual set of facts that are not commonly associated with a particular thing or event.” Black’s Law Dictionary, 7th Ed. “Extraordinary” has been defined as “going beyond what is usual, regular, common or customary ... exceptional to a very marked extent.” Webster’s Third New International Dictionary. “Reasonable” has been defined as “being or remaining within the bounds of reason: not extreme: not excessive”. Id. “Necessary” has been defined as “that cannot be done without: that must be done or had: absolutely required”. Id.
Rebecca Cloutier, Petitioner, In Re: A.C. (Minor Child), supra, 1 M.T.C.R. at 51, 6 Am. Tribal Law at 462, 2006 WL 6177325; Scott Quidgeon, Petitioner, In Re: T.T. and T.T. (Minor Childen), supra, 1 M.T.C.R. at 47, 6 Am. Tribal Law at 458, 2006 WL 6177326; Seidel v. Mohegan Tribe, supra, 1 M.T.C.R. at 39-40, 6 Am. Tribal Law at 450-451, 2005 WL 6238704.
2. The Petition and the Facts
The Petitioner has requested the Court to distribute a total of $28,303.55 from the minors’ trusts (Ex. 7). The Petitioner has been unemployed since July of 2007, when he and his family moved to Florida so that his wife could begin a new job at the Mardi Gras Casino. Before moving, the Petitioner had a seasonal job with the public works department of the Tribe. Currently, his only income is his quarterly tribal per capita payment.[1] After moving to Florida, Petitioner’s wife commenced her new job, but just before the end of her ninety (90) day probationary period she was terminated. Petitioner has been actively seeking employment since moving to Florida and his wife has also been seeking employment since her job termination. In accordance with the Court’s “Order To Notify Court Of Employment Status” (Pleading # 114), the Petitioner notified the Court on February 12, 2008 that he had just been hired as a Security Officer; that his new job is to commence on or about February 18, 2008; and that his hourly rate of pay will be ten dollars ($10.00) per hour for a forty (40) hour week (Pleading # 115).
 Since moving to Florida in July of 2007, the Petitioner and his wife have borrowed approximately $6,700.00 from family members to pay for food, rent, gas, school uniforms, utility bills, an automobile loan and automobile insurance. The Petitioner has requested a distribution from the minors’ trusts to repay these family loans (Ex. 7). However, his relatives have expressed a willingness to wait for repayment and such distribution is not necessary for the health, education or welfare of the minor children. In addition, the Petitioner has requested a distribution from the minors’ trusts in the amount of $1,795.66 to repay a loan from Tribal Social Services; he took this loan to pay for similar expenses. However, if the Petitioner does not commence periodic loan repayments in the near future, then the *347 Tribe is likely to start deducting the loan payments from his quarterly per capita distributions. The distribution requested for repayment of the loan made by Tribal Social Sendees is also not necessary for the health, education or welfare of the minor children.
Notwithstanding the financial assistance from family members and the loan from Tribal Social Services, the Petitioner had accumulated a rental arrearage of $7,770.00 as of the hearing date (Ex. 15). The landlord and her boyfriend are family friends and have not yet started court eviction proceedings against the Petitioner and his family. However, the landlord has issued an “Eviction Notice” (Ex. 15)[2] for non payment of rent, and at this time, the Petitioner is unable to pay the significant rental arrearage. The family’s ability to stay in their home is therefore in jeopardy. Further, their ability to find other living quarters, at a rent they can afford and with advance payment of one month’s rent and a security deposit, is uncertain. The Petitioner has requested a distribution to pay this rental arrearage.
The Petitioner’s children have adjusted well in the charter school they are now attending. C.B. has had behavioral problems in school but is making friends at the charter school. His parents are understandably reluctant to make any changes which require the family to move out of state for employment, before the end of the school year.
In additional to requesting the foregoing distributions, the Petitioner has also requested distributions from the minors’ trusts to pay for the following (Ex. 7):
(1)The arrearage on the automobile loan. The wife is the owner of the only family vehicle and has an arrearage on her automobile loan of $1,626.21. She has recently received a vehicle repossession warning from her lender (Ex. 10). The charter school attended by the children is located over twelve (12) miles from the family home and does not provide any transportation for its students. Therefore, the family car' is needed to transport the children to and from the school;
(2) The arrearage on the automobile insurance of $453.08;
(3) A bank overdraft of $1,767.59;
(4) Other overdue utility bills;
(5) The increased grocery costs for a special diet for his son;
(6) Clothes and school uniforms for the children;
(7)Several extracurricular activities for the children ($934.95); and
(8) Four months of after school care for the children ($1,292.00);
The Court declines to authorize distributions for the items listed in paragraphs 3-8. The Petitioner has provided documentation from his son’s physician indicating that C.B. would benefit from a special diet eliminating certain foods and chemicals which contribute to his behavioral and psychiatric problems (Ex. 25). However, the Petitioner has not requested a specific monetary distribution for purposes of this diet (Ex. 7), nor could he testify as to what the increased family food costs would be for such a diet. The wife is currently unemployed and can now take care of her children after school, so there is no need for such requested distribution. While the provision of extracurricular ac *348 tivities for the children is desirable, distributions for these activities are not necessary for the health, education or welfare of the minor children. Parents have a common law duty to support their minor children within the reasonable limits of then-ability. Seidel v. Mohegan Tribe, supra, 1 M.T.C.R. at 41, 6 Am. Tribal Law at 453, 2005 WL 6238704. With the Petitioner’s new employment, clothing for the children and the recurring utility bills should be paid by him.
On the other hand, the Court finds that the requested distribution for payment of the rental arrearages is necessary for the welfare of the children. The parents have had extended periods of unemployment despite their efforts to find jobs, and the accumulated rental arrearage has made the family housing situation highly unstable. The unstable and uncertain housing situation imperils the welfare of the children.
In addition, without a family vehicle, the children cannot be transported to school; therefore, distributions to pay for the automobile loan and insurance are also necessary for the general welfare of the children.
This case is distinguishable from Scott Quidgeon, Petitioner, In Re: T.T. and T.7. (Minor Childen), supra, 1 M.T.C.R at 46, 6 Am. Tribal Law at 457, 2006 WL 6177326. In that case, this Court denied all the distributions requested except the request to pay for pre-school tuitions, even though the parents had also experienced extended periods of unemployment and had accumulated debts. That family, however, was not threatened with the loss of their housing or all means of family transportation, as in the instant case. Two of the distribution requests denied in Quid-geon were for the purchase of a new automobile and for automobile repairs. In denying those distribution requests this Court noted that “the Petitioner and his wife have the responsibility to provide for their own transportation needs and those of their children,” Id. at 49, 6 Am. Tribal Law at 460, 2006 WL 6177326. The facts in the instant case are distinguishable, however. The children live over twelve (12) miles from their school and must be driven to school by their parents since no bus service is provided. The one family vehicle is financed and both the automobile loan and the insurance payments are delinquent. The loss of the only family vehicle would jeopardize the ability of the parents to get their children to school. Further, it is manifest that having a roof over one’s head is one of the necessities of life, Reuther v. Fidelity Union Trust Co., 15 Backes 81, 116 N.J.Eq. 81, 172 A. 386 (1934), and that having a family home is essential to the welfare of the Tribal children in this case.
The Court therefore finds that limited extraordinary circumstances exist in this case due to the threatened loss of the family’s housing and the threatened repossession of the family automobile needed to drive the children to school. MTC § 2-181. The Petitioner has sustained his burden of showing, by a preponderance of the evidence, that distributions for these purposes are for the welfare of the minor children and that the amounts requested are reasonable and necessary. MTC § 2-183(h)(5). The distribution requests made by the Petitioner in connection with the rent, the automobile loan and the automobile insurance are to pay the arrearages for these items (Ex.7). The Court is mindful of the fact, however, that even with the Petitioner’s new job, he will have great difficulty paying the rent ($1,850/month), the automobile loan and the automobile insurance for the balance of the school year (which ends in May). The Court therefore finds that distributions from the *349 minors’ trusts are necessary to ensure that the children will have a stable housing situation and transportation to their school for the balance of the school year. After that date, however, the parents need to provide for housing within their means and to formulate a plan which enables them to provide for the support of their children and the payment of the family household expenses.
3. Conclusion
The Court hereby orders that the sum of $9,110.23 be distributed to the Petitioner from the trust of M.B., and that the additional sum of $9,110.23 be distributed to the Petitioner from the trust of C.B., to defray expenses totaling $18,220.46, which require payment for the welfare of the minor children. The expenses to be paid from the funds distributed are as follows:
(1) Rental arrearage as of hearing date: $ 7,770.00
(2) Rent for March, April and May, 2008 at $1,850/month: $ 5,550.00
(3) Automobile loan arrearage as of hearing dale: $ 1,626.21
(4) Automobile loan for March, April and May, 2008 at $487.31/month: $ 1,461.93
(5) Automobile insurance for February, March, April and May, 2008 at $453.08/
month: $ 1,812.32
Total: $38,220.46

. Petitioner’s net per capita distribution in February 2008 was $2,906.77, after withholding for federal taxes, deductions for child support for two other minor children and a deduction for a tribal business loan. An additional net check of $850.00 was also disbursed to him at the same time (from a gross disbursement of $ 1,000.00 made by the Tribe for miscellaneous purposes).

. The notice appears to have been prepared by the landlord and there is no indication that it complies with Florida’s legal requirements for an eviction notice. It is evidence, however, that the landlord will not let the already significant rental arrearage accumulate indefinitely.