MEMORANDUM OF DECISION
JANE W. FREEMAN, Judge.
The Petitioner, Kathleen Woodmancy (“Petitioner”), has petitioned the Court to authorize distributions from the grantor trust established by the Mohegan Tribe (“Tribe”) for her benefit. The Tribe contributes per capita benefits to grantor trusts for future distribution to minor Tribal members, in order to provide for their future safety and well being. MTC § 2-183(h). The Tribe has filed an Answer stating that it takes no position on the petition.
The Court has jurisdiction of the parties. The Petitioner is a member of the Tribe (Ex. 2) and the Tribe is a party to the proceeding. The petition has been filed under the provisions of the Gaming Revenue Allocation Plan, MTC § 2-181, et seq. (“GRAP”). Under the GRAP, the *363 Court may authorize the trustee or trustees of trusts established for minor children to make distributions to the parents or guardians of the trust beneficiaries, for the purposes and subject to the limitations set forth therein. MTC § 2-183(h)(5). This case differs from prior cases involving early distributions under the GRAP, in that the Petitioner is not the parent of the trust beneficiary but is the trust beneficiary herself. Therefore, the Court must address whether the Petitioner has standing to file this petition, since the question of standing implicates the Court’s subject matter jurisdiction. McWeeny v. City of Hartford, 287 Conn. 56, 63-4, 946 A.2d 862 (2008). As set forth below, the court finds that the Petitioner has standing to file this petition under the GRAP.
I. The Gaming Revenue Allocation Plan
As part of the GRAP, the Tribe has made provision for the future welfare of its minor tribal members by contributing their per capita benefits to grantor trusts owned by the Tribe “to be invested, with income on trust principal to be accumulated, for future distribution to those minor tribal members.” MTC § 2-181; Thomas Belisle, Jr. Petitioner, In Re: M.B. and C.B. (Minor Children), 1 M.T.C.R 60, 7 Am. Tribal Law 343, 2008 WL 5501085 (2008); Rebecca Cloutier, Petitioner, In Re: A.C. (Minor Child), 1 M.T.C.R 50, 6 Am. Tribal Law 461, 2006 WL 6177325 (2006); Scott Quidgeon, Petitioner, In Re: T.T. and T.T.(Minor Children), 1 M.T.C.R 46, 6 Am. Tribal Law 456, 2006 WL 6177326 (2006). The GRAP indicates that the Tribe shall provide for the future welfare of its minor tribal members, but that tribal member parents are encouraged to pay for the immediate living needs of their children. MTC § 2-181. No distributions may be made from the grantor trusts until the minor is eighteen years old, except in limited extraordinary circumstances.
All assets accumulated in the grantor trusts for future distribution to a minor tribal member shall be distributed at such time as the minor reaches the age of eighteen (18) and not before, except in the limited, extraordinary circumstances provided in Subsection 2-183(h)(5) (emphasis added).
MTC § 2-181.
The limited extraordinary circumstances under which distributions may be made from trusts for the benefit of minor tribal members are as follows:
Prior to the time the beneficiary reaches the age of eighteen (18), the Tribal Court may, after careful consideration of the facts, authorize the trustee or trustees of the trust or trusts to make distributions from the trust or trusts to the parents or guardians of the beneficiary only to defray unreimbursed medical expenses or only as necessary to defray expenses for health, education, or welfare incurred by or on behalf of the beneficiary as established by such parents or guardians. Any request for such disbursements shall include a detailed budget of monies necessary for essential living expenses to include health, education, or welfare costs and only upon presentment of a detailed justification for such essential living needs. The petitioning parent or guardian must show, by a preponderance of the evidence, that the amount requested to defray unreim-bursed medical expenses or expenses for health, education or welfare, are reasonable and necessary. The Tribal Court may also require that the petitioning parent or guardian submit receipts of expenditures made from funds disbursed hereunder before any future disbursements are made (emphasis added).
*364 MTC § 2-183(h)(5); see also; Seidel v. Mohegan Tribe, 1 M.T.C.R 38, 39, 6 Am. Tribal Law 449, 2005 WL 6238704 (2005).
A. Standing to Petition for Early Distribution
Under the GRAP, the parent or guardian of a trust beneficiary may petition the Court for a trust distribution before the minor reaches the age of eighteen. MTC § 2—183(h)(5). In this ease, however, Petitioner is the trust beneficiary. Although she has living parents, the Petitioner is an emancipated minor (Ex. 1). The effects of her emancipation include the following: her parents are no longer her guardians, Conn. Gen.Stat. § 46b-150d(k); they are relieved of all obligation to support her, Conn. Gen.Stat. § 46b-150d(m); and Petitioner may sue in her own naine. Conn. Gen.Stat. § 46b-150d(c).[1]
Although Petitioner is still a minor, she no longer has any guardian. Further, her parents have not supported her since her emancipation. Therefore, they would not have standing to petition for an early distribution, since such distributions are to be used only to defray expenses for a minor’s health, education and welfare. Petitioner’s parents have no such expenses because they do not provide her with any financial support. However, it would thwart the essential purpose of MTC § 2-183(h)(5), that is to meet the essential needs of Tribal children, if this provision of the GRAP were interpreted such that no person had standing to petition for an early distribution. “It is ... a fundamental principle of statutory construction that courts must interpret statutes using common sense and assuming that the legislature intended a rational result ... Courts also must not interpret statutes in such a manner so as to thwart their purpose.” State v. Wilcox, 105 Conn.App. 24, 27, 936 A.2d 295 (2007). Consistent with these principles of statutory construction, the Court finds that Petitioner, as an emancipated minor, stands in the shoes of her parents, formerly her guardians, so that she has standing to file this petition for early distribution.
B. Extraordinary Circumstances for Early Trust Distributions
The Tribal Council has expressed a clear intent in the GRAP to limit distributions from grantor trusts to extraordinary circumstances, where the amounts requested are reasonable and necessary. Further, the Tribal Court is limited to authorizing distributions from trust only where it has made a factual determination that the distributions are “necessary to defray expenses for health, education or welfare incurred, by or on behalf of the, beneficiary ...” MTC § 2—183(h)(5).
“Extraordinary circumstances” are “[a] highly unusual set of facts that are not commonly associated with a particular thing or event.” Black's Law Dictionary, 7th Ed. “Extraordinary” has been defined as “going beyond what is usual, regular, common or customary ... exceptional to a very marked extent.” Webster’s Third New Internationa,l Dictionary. “Reasonable” has been defined as “being or remaining within the bounds of reason: not extreme: not ex *365 cessive”. Id. “Necessary” has been defined as “that cannot be done without: that must be done or had: absolutely required”. Id.
Thomas Belisle, Jr. Petitioner, In Re: M.B. and C.B. (Minor Children), supra, 1 M.T.C.R. at 61, 7 Am. Tribal Law at at 346, 2008 WL 5501085; Rebecca Cloutier, Petitioner, In Re: A.C. (Minor Child), supra, 1 M.T.C.R. at 51, 6 Am. Tribal Law at 461-62, 2006 WL 6177325; Scott Quidgeon, Petitioner, In Re: T.T. and T.T. (Minor Children), supra, 1 M.T.C.R. at 47, 6 Am. Tribal Law at 457, 2006 WL 6177326; Seidel v. Mohegan Tribe, supra, 1 M.T.C.R 38, 39, 6 Am. Tribal Law at 450, 2005 WL 6238704.
II. The Petition and the Facts
The Petitioner initially requested this Court to make an early distribution from her grantor trust in the amount of $55,843 (Pleading # 101). The proposed budget submitted with the petition was based upon the assumption that Petitioner would be moving out of the Banks’ home where she was then residing and into her own apartment. The Court appointed a Guardian Ad Litem (“GAL”) for the Petitioner as required by Mohegan Tribal Resolution Nos.2008-26[2] and 2008-36[3]. Prior to the Court’s hearing on the petition, the GAL filed a lengthy and comprehensive report concerning Petitioner and her minor child; their living arrangements and their financial needs; and recommendations on the early disbursements requested by Petitioner (Pleading # 115).[4] Included in this report, was a revised budget for Petitioner; it was based on the assumption that Petitioner and her minor child would not move into their own apartment and would continue to reside in the home of Mr. and Mrs. Banks, until at least Petitioner’s high school graduation. In addition to that report, the GAL has filed separate recommendations as to “whether there exist limited extraordinary circumstances so as to justify whether the requested distribution or any portion thereof, and any conditions or restrictions deemed appropriate in connection therewith.” Moh. R.P. § 10B (a).2; (Pleading # 116). At the hearing on the petition, the GAL filed a further revised budget, noting the estimated taxes Petitioner would need to pay based on the GAL’s recommended trust distributions (Ex. 6, Schedule A). Additionally, the GAL has responded to the Court’s request for further details on the Petitioner’s proposed payments to the Banks for room and board (Pleading # 119).
The GAL has recommended that the Court deny the Petitioner’s original request for a $55,483 lump sum disbursement; approve a lesser lump sum disbursement of $20,000; and approve quarterly disbursements directly to Petitioner in the full amount of her per cap-ita payments. The GRAP requires that *366 per capita payments for minors be made to trusts for the minors, MTC § 2-183(h), and therefore no per capita payments made by the Tribe under the GRAP may be distributed directly to a minor. However, the Court does have authority to order the distribution of funds already deposited into a grantor trust for a minor, subject to the provisions of MTC § 2—183(h)(5).
The GAL has recommended that a gross lump sum disbursement of $20,000 be made to Petitioner from her trust, to be used in part, for the purchase of a used automobile ($12,000) and for the purchase of a computer ($800). The GAL has recommended that the balance of the $20,000 be used to pay Petitioner’s withholding taxes and interim expenses and for a deposit into a savings account.
Petitioner and her infant son, T.W., have been residing in the home of Michael and Terri Banks since June of 2008. Petitioner became emancipated by a decree of the Northeast Regional Children’s Probate Court in August of 2008 (Ex. 1). She is sixteen years old and a full time student (currently a sophomore) at Killingly High School, which she attends with the Banks’ two sons. Her son is in day care when she attends school. The GAL reports that the Banks appear committed to having the Petitioner remain in their home until at least her eighteenth birthday on June 1, 2010. Mrs. Banks currently drives the Petitioner’s son to and from daycare and provides all other needed transportation for the Petitioner and her son, including transportation to medical appointments and to the grocery store. On some occasions, Mrs. Banks has to leave work (she is self employed) so that she can pick T.W. up from daycare. Mr. and Mrs. Banks also provide all transportation needed by their teenage sons, including to and from their jobs.
The GAL submits that an early distribution for an automobile is a reasonable and necessary expense for the Petitioner, in that it provides a certain level of needed convenience. The Petitioner has recently secured her driver’s license and says that she needs a car to drive her son to and from daycare; to drive to medical appointments; and to eliminate any inconvenience to Mrs. Banks. However, Petitioner would need both a lump sum distribution from her trust to purchase the automobile, and periodic early distributions for gas, maintenance and insurance estimated at a total of $400 per month (Ex. 5) if she had a car. Petitioner had a part time job working for the Banks in their house cleaning business last summer; however, currently she is not employed and does not require transportation for employment purposes. While an automobile would provide some measure of convenience, it is not something that is absolutely required at this time, for the Petitioner’s health, education or welfare. The transportation needs of both the Petitioner and her son are currently being met. The Court therefore finds that at this time, a lump sum distribution for purposes of purchasing an automobile is not a necessary expense within the meaning of MTC § 2—183(h)(5).
The GAL has also recommended an early disbursement for the purchase of a computer. Petitioner testified that all of her homework must be done on a computer. Currently, she uses either a computer at school or the computer in the Banks home to complete her homework. Petitioner testified that the computer in the Banks home is very slow and sometimes does not work; however, she says that she has been able to complete her assignments. Therefore, the Court finds that an early disbursement for a computer is not a necessary expense within the meaning of MTC § 2-183(h)(5).
*367 Petitioner also seeks periodic early disbursements to pay for her living expenses at the Banks, her personal needs and baby items. The GAL has filed both a proposed budget for these periodic expenses and Guardian Ad Litem Recommendations (Pleading # 116). The GAL recommended that the Petitioner receive early distributions from her trust in the amount of $1,285 per month (or $3,855 per quarter). This recommended sum included a total of $400 per month for gasoline, maintenance and automobile insurance, which the Petitioner will not need since the Court has not ordered a distribution for the purchase of an automobile. It also included $100 per month for “discretionary funds” and $360 per month for payment of rental and board to Mr. and Mrs. Banks. The Court finds that the proposed discretionary funds are not necessary expenses; as noted in the proposed budget, they would be for the Petitioner’s social activities. Earnings from summer employment could provide a resource for these types of discretionary expenses. The GAL provided a detailed breakdown of the monthly expenses for room and board for the Petitioner and her son (Pleading # 119). The GAL’s recommended payment of $360 per month was calculated based on Petitioner and her son’s proportionate share of the monthly rent, utilities and food for the Banks home.[5] The Banks children do not make a regular monthly contribution towards these expenses, although they are periodically asked to help with family bills. Mrs. Banks stated that the incremental cost attributable to having the Petitioner and Petitioner’s son in the Banks home were limited to food ($30 per week); waste collection ($5 per week); gasoline ($5 per week); and minimal increases for water and electricity. A payment by Petitioner to Mr. and Mrs. Banks of $50 per week (or $220 per month)[6] would cover these incremental costs. In addition, the GAL recommended, and the Court agrees, that a monthly distribution should be made to Petitioner for the following additional expenses: telephone ($25/month); baby items ($200/month); and personal items for the Petitioner ($200/month). The Court finds that a total distribution to Petitioner of $645 per month (or $1,935 per quarter) is reasonable and necessary in order for Petitioner to pay for room and board and for the additional expenses listed above. The Tribe has complied with the Court’s Order Re Tax Information and informed the Court that there is no requirement for the withholding of federal or state income taxes where a quarterly distribution of $1,935 is made to Petitioner from her trust.[7]
Petitioner has never had access to significant amounts of money before and has no experience in managing and balancing a checkbook. The GAL recommended that there be certain controls to ensure that the Petitioner accounts for the expenditure of all distributions made from her trust and to provide the Petitioner with the necessary budgeting and financial skills she will need in the future. Chris Krol, of the Tribe’s Social Services Department informed the Court that his office frequently assists tribal members needing to acquire these skills. While the Court could require that distributions from trust be paid directly to specified obligees on *368 behalf of the Petitioner, such a control would deprive the Petitioner of the opportunity to learn how to manage her own checkbook and to acquire budgeting skills with the assistance of the Tribe’s Social Services Department. Therefore, all early distributions hereafter ordered shall be paid directly to Petitioner as sole payee, but subject to the conditions for accounting and monitoring hereafter described.
III. Orders
In reaching its decision, the Court has considered the factors in MTC § 2-183(h)(5); the Report and the Recommendations of the GAL, including the proposed budget for the Petitioner; all testimony from the hearings on the petition; and the tax information provided by the Tribe.
It is hereby
ORDERED, that:
1. The sum of $1,935 per quarter shall be distributed to Kathleen Woodmancy from her trust, commencing on February 1, 2009 and continuing quarterly thereafter on the following dates: May 1, 2009; August 1, 2009; November 1, 2009; February 1, 2010; and May 1, 2010, or until further order of this Court. Each such payment shall be made by direct deposit to Petitioner’s checking account and she shall promptly furnish all required information to the Finance Department so that direct deposits can be made;
2. From the $1,935 quarterly distribution paid to Petitioner, she shall pay the following expenses:
a.$220 per month to Terri and Michael Banks for room and board for Petitioner and her son, for each month they reside in the Banks home. Petitioner shall pay each monthly payment by check not later than the fifteenth day of each month, commencing February 2009 and terminating on June 1, 2010;
b. $25 per month, or the actual cost not exceeding $25 per month, for Petitioner’s cell phone, also to be paid by check;
c. $200 per month for baby items, including clothing, toys and other needed supplies;
d. $200 per month for Petitioner’s personal items, as set forth in her proposed budget filed with the Court on November 17, 2008;
e. Petitioner shall make every effort to pay for the items in paragraphs 2.b. and 2.c. by check. In the event an item is not paid for by check, Petitioner shall secure a receipt for the cash payment. Petitioner shall maintain a Cash Journal for all items which are paid for in cash. The Cash Journal shall include the following: the date and amount of each cash payment; the item purchased or paid for; the name of the vendor/payee; and a receipt for the cash expenditure;
3. Commencing in January of 2009, Petitioner shall meet with Chris Krol, or another member of the Tribe’s Social Services Department designated by him, not less than once a month, at intervals of not greater than thirty (30) days between meetings, for the following purposes: to review budgeting issues; to assure that her checkbook is being properly balanced; and to review her Cash Journal. Petitioner is responsible for scheduling such meetings and shall attend each meeting scheduled. In the event that the Department of Social Services determines that more frequent meetings are necessary for such puiposes, Petitioner shall attend such additional meetings scheduled by the Tribe’s Department of Social Services;
4. In December of 2009, Petitioner shall meet with the Tribe’s tax (withholding) specialist in the Finance Department to ensure that her tax deductions (state and federal) and exemptions for the year *369 2010 are correct, taking into account the distribution to be made from her trust when she reaches the age of majority on June 1, 2010;
5. Petitioner shall continue her efforts to secure a paternity adjudication and order of child support from the father of her son;
6. This case is continued unto April 24, 2009 at 2:00 P.M. at which time the Petitioner shall appear and provide the Court with the following: a list of the dates of her meetings with the Tribe’s Department of Social Services; proof reasonably satisfactory to the Court that she has maintained a Cash Journal and other proper-records of all expenses paid by her from trust funds disbursed; written documentation from either the State Department of Social Services or other legal authority concerning the then current status of any proceedings to secure a paternity adjudication and order of child support from the lather of her son.

. Conn. Gen.Stat. § 46b-150d provides in pertinent part as follows: "An order that a minor is emancipated shall have the following effects: ... (c) the minor may sue and be sued in his own name; ... (k) the parents of the minor shall no longer be the guardians of the minor under section 45a-606; ... (m) the parents shall be relieved of all obligation to support the minor:...." Conn. Gen.Stat. § 45a-606 provides, in part, as follows: "The father and mother of every minor child are joint guardians of the person of the minor ...."

. Mohegan Tribal Resolution No.2008-26 provides, in part, as follows: "... the Tribal Council finds it in the best interest of its minor tribal members to appoint them a Guardian Ad Litem, at the expense of the Tribe, in any matter in which their parent or guardian petitions the Tribal Court for an early distribution from their per capita trust; and ... the Guardian Ad Litem shall investigate and make a recommendation to the Tribal Court as to whether or not the early disbursement meets the limited extraordinary circumstances as outlined in the GRAP;

. Mohegan Tribal Resolution No.2008-36 provides, in part, as follows: "... to further ensure the best interest of the minor Tribal children, if the Tribal Court orders an early distribution from a minor’s per capita the Guardian Ad Litem shall make a recommendation to the Court regarding the manner in which the funds be disbursed.”

. This report has been sealed by the Clerk pursuant to Moh.R.P. § 10B(a).l and (b).

. There are currently eight people living in the Banks home, including the Petitioner and her son. The figure of $360 is one eighth of the total monthly household expenses for rent, utilities and food.

. A disbursement of $50 per week is equivalent to $216.66 per month. The Court will round this number to $220 per month.

. The Tribe's calculation was based on Petitioner’s having no other sources of income.