JANE W. FREEMAN, Judge.
MEMORANDUM OF DECISION
The Petitioner, Susan Wendy Meehan, has petitioned the Court to authorize distributions from the grantor trust established by the Mohegan Tribe (“Tribe”) for the benefit of her minor child, C.M. The Tribe contributes per capita benefits to these trusts for future distribution to minor Tribal members, in order to provide for their future safety and well being, MTC § 2—183(h). The Tribe has filed an Answer stating that it takes no position on the Petition.
The Court has jurisdiction of the parties. The Petitioner and the minor child are members of the Tribe and the Tribe is a party to the proceeding. The Court also has subject matter jurisdiction pursuant to the Gaming Revenue Allocation Plan, MTC § 2-181, et. seq. (“Plan”). Under the Plan, the Court may authorize the trustee or trustees of trusts established for minor children to make distributions to the parents or guardians of the trust beneficiaries, for the limited extraordinary circumstances in MTC § 2—183(h)(5).
A Guardian Ad Litem (“GAL”) has been appointed to investigate and recommend to the Court whether the early disbursement requested meets the limited extraordinary circumstances outlined in the Plan [1] and if such a disbursement is ordered, then to recommend the manner in which funds should be disbursed.[2]
1. The Gaming Revenue Allocation Plan
As part of the Plan, the Tribe has made provisions for the future welfare of its minor tribal members by contributing *229 their per capita benefits to grantor trusts owned by the Tribe “to be invested, with income on trust principal to be accumulated, for future distribution to those minor tribal members.” MTC § 2-181; Thomas Belisle, Jr., Petitioner, In Re: M.B. and C.B., 1 M.T.C.R 60, 7 Am. Tribal Law 343 (2008); Rebecca Cloutier, Petitioner, In Re: AC., 1 M.T.C.R 50, 6 Am. Tribal Law 461 (2006); Scott Quidgeon, Petitioner, In Re: T.T. and T.T., 1 M.T.C.R 46, 6 Am. Tribal Law 456 (2006). The Plan provides that the Tribe shall provide for the future welfare of its minor tribal members, but tribal member parents are encouraged to pay for the immediate living needs of their children. MTC § 2-181. No distributions may be made from the grantor trusts until the minor is eighteen years old, except in limited extraordinary circumstances.
All assets accumulated in the grantor trusts for future distribution to a minor tribal member shall be distributed at such time as the Tribal Council deems appropriate but not before the minor reaches the age of eighteen (18), except in the limited, extraordinary circumstances provided in Subsection 2-183(h)(5) (emphasis added).
MTC § 2-181.
The limited extraordinary circumstances under which distributions may be made from trusts for the benefit of minor tribal members are as follows:
Prior to the time the beneficiary reaches the age of eighteen (18), the Tribal Court may, after careful consideration of the facts, authorize the trastee or tras-tees of the trust or trusts to make distributions from the trust or trusts to the parents or guardians of the beneficiary only to defray unreimbursed medical expenses or only as necessary to defray expenses for health, education, or welfare incurred by or on behalf of the beneficiary as established by such parents or guardians. Any request for such disbursements shall include a detailed budget of monies necessary for essential living expenses to include health, education, or welfare costs and only upon presentment of a detailed justification for such essential living needs. The petitioning parent or guardian must show, by a preponderance of the evidence, that the amount requested to defray unreim-bursed medical expenses or expenses for health, education or welfare, are reasonable and necessary. The Tribal Court may also require that the petitioning parent or guardian submit receipts of expenditures made from funds disbursed hereunder before any future disbursements are made (emphasis added).
MTC § 2—183(h)(5); see also Thomas Belisle, Jr., Petitioner, In Re: M.B. and C.B., supra, 1 M.T.C.R. at 61, 7 Am. Tribal Law at 345; Rebecca Cloutier, Petitioner, In Re: AC., supra, 1 M.T.C.R. at 51, 6 Am. Tribal Law at 462; Scott Quidgeon, Petitioner, In Re: T.T. and T.T., supra, 1 M.T.C.R. at 47, 6 Am. Tribal Law at 458; Seidel v. Mohegan Tribe, 1 M.T.C.R. 38, 39, 6 Am. Tribal Law 449, 451 (2005).
The Tribal Council has expressed a clear intent in the Plan to limit distributions from grantor trusts to extraordinary circumstances, where the amounts requested are reasonable and necessary. Further, the Tribal Court is limited to authorizing distributions from trust only where it has made a factual determination that the distributions are “necessary to defray expenses for health, education or welfare incurred by or on behalf of the beneficiary ...” MTC § 2—183(h)(5).
“Extraordinary circumstances” are “[a] highly unusual set of facts that are not commonly associated with a particular thing or event.” Black’s Law Dictionary. 7lh Ed. “Extraordinary” has been defined as “going beyond what is usual, *230 regular, common or customary ... exceptional to a very marked extent.” Webster’s Third New International Dictionary. “Reasonable” has been defined as “being or remaining within the bounds of reason: not extreme: not excessive”. Id. “Necessary” has been defined as “that cannot be done without: that must be done or had: absolutely required”. Id.
Thomas Belisle, Jr., Petitioner, In Re: M B. and C.B., supra, 1 M.T.C.R. at 61, 7 Am. Tribal Law at 346; Rebecca Cloutier, Petitioner, In Re: A.C., supra, 1 M.T.C.R. at 51, 6 Am. Tribal Law at 462-463; Scott Quidgeon,, Petitioner, In Re: T.T. and T.T., supra, 1 M.T.C.R. at 47, 6 Am. Tribal Law at 458-459; Seidel v. Mohegan Tribe, supra, 1 M.T.C.R. at 39-40, 6 Am. Tribal Law at 451.
2. The Petition and the Facts
The Petitioner initially requested the Court to distribute a total of $40,000 from the minor’s trust to pay for forty (40) hours per week of skilled nursing care for the minor child and to pay for the costs of paving a driveway at the family home. Subsequently, the Petitioner filed an amended petition (Pleading #111) in which she eliminated the request for a disbursement to pay for skilled nursing care. At the hearing on the amended petition, Petitioner informed the Court that she was no longer requesting a trust distribution for forty (40) hours of skilled nursing care because a long term care policy recently purchased by the Tribe would pay for that care.[3]
The Petitioner requests a distribution from the minor child’s trust to pay the costs for paving a driveway at the family home in Oakdale, Connecticut, which she says is necessary for the welfare of the minor child, C.M. C.M. is six and a half years (6½) old and has intractable epilepsy, an extraordinary seizure disorder. She resides in the family home with her parents and three siblings. Currently, the driveway is unpaved and full of ruts (Plaintiffs Ex. 9). A paved driveway is needed, the Petitioner states, so that medical providers and emergency personnel will not have difficulty in reaching the Petitioner’s home from the public street. During the winter months when snow, ice and mud accumulate on the unpaved driveway, it is difficult, and sometimes impossible, for vehicles without four wheel drive to reach the Petitioner’s home from the public street. Muddy driveway conditions also exist at other times of the year when there is melting or heavy rainfall. The Petitioner’s home is located approximately one hundred (100) yards from the public street.
The foregoing conditions severely limit access to the family home for emergency vehicles and medical care providers who frequent the home to provide care for C.M. During major “drop down” seizures she may lose consciousness, her blood oxygen levels are depleted and she must rely on the emergency response of her parents, trained medical providers and emergency first responders for life support (Plaintiffs Ex. 15). On several occasions, emergency personnel have not been able to drive their vehicles to the family home from the public street, due to the impassable conditions above described. In such cases, the Petitioner has had to carry her daughter to the family’s four wheel drive vehicle and then drive her to the ambulance at the end of the unpaved driveway, while simultaneously administering first aid. The GAL has noted that the “confluence of driving *231 through difficult conditions while administering first aid to a young child could easily lead to a mishap which would result in dire, if not fatal, consequences for the child.” (Plaintiffs Ex. 14). The Petitioner also indicated at the hearing that because her daughter is now over fifty (50) pounds, she is having difficulty carrying her from the house to the family car, when her husband is not at home to help with an emergency.
In addition, a language-speech pathologist who provides weekly therapy services to C.M. at the child’s home, has had to reschedule therapy sessions when severe weather conditions make the driveway impassable. The driveway problem is likely to increase in frequency once providers of the skilled nursing care start coming to the family home for a forty (40) hour work week.
Petitioner provided the Court with three (3) cost estimates for paving the driveway (Plaintiffs Exhibits 10, 11 and 12). The estimates range from a low of $22,000 (Plaintiffs Ex. 12) to a high of $31,684 (Plaintiff’s Ex. 11). Petitioner prefers to use G.W. Paving (“GW”) as the contractor because GW would not use any subcontractors; it owns all its own equipment so that there would be no equipment rental costs; and its estimate includes all costs for removal of rock and ledge. GW’s cost estimate for paving the driveway is $24,480 (Plaintiffs Ex. 10).
The GAL has concluded that the minor child's medical condition is an extraordinary circumstance and that a distribution from her trust would be in her welfare (Plaintiffs Ex. 14). He recommends that the Court grant the amended petition and order a total disbursement of $24,480 from the minor’s trust, payable to GW in two equal installments: an initial disbursement upon signing of the contract and a final disbursement upon satisfactory completion of the contract work. The GAL notes that the Petitioner is willing to reimburse the minor’s trust at the rate of $100 per week and he initially requested that the Court order such reimbursement. He subsequently modified his request to encourage the Petitioner to make reimbursement on a voluntary basis, on terms acceptable to the Tribe (Plaintiffs Ex. 16). This Court has previously ruled that parents or guardians may not borrow money from a minor child’s per capita trust, Scott Quidgeon, Petitioner, In Re: T.T. and T.T., supra, 1 M.T.C.R. at 47, 49, 6 Am. Tribal Law at 458, 460; therefore, no order shall be made regarding reimbursement.
After reviewing the amended petition and supporting documents, the evidence and the GAL’s recommendation, the Court finds that the combined affect of the minor child’s serious medical condition and the inaccessibility of her home to emergency and other medical personnel is an extraordinary circumstance as contemplated by MTC § 2—183(h)(5). C.M.’s seizure disorder, resulting from vaccinations administered to her in infancy, requires that emergency medical personnel have unimpeded and immediate access to her family home for medical treatment in a life threatening event.
The Court finds that the Petitioner has sustained her burden of proving, by a preponderance of the evidence, that a trust distribution to pay for paving the driveway is necessary for the welfare of the minor child and that the amount requested is reasonable. MTC § 2—183(h)(5). Currently, the Petitioner and her spouse do not have the financial ability to pay this expense. The Petitioner’s financial disclosure statement indicates that she and her spouse have substantial debt and no liquid assets to pay for paving the driveway. The Petitioner’s whole life insurance policy *232 was recently cashed in to pay for C.M.’s skilled nursing care but the proceeds have been depleted. While Petitioner could conceivably sell part of the six acre home site to raise money, there are too many obstacles and uncertainties about the timing of and the potential for such a sale. Petitioner’s lender is unlikely to release part of its security to permit the sale because of the very limited equity in the property; there is no assurance that a second building lot would be approved because the site has significant rock and ledge and wetlands; and even if a second building lot were approved, there is significant uncertainty about the marketing time for a sale in the current recession The welfare of the minor child requires that the driveway be paved promptly and Petitioner’s ability to quickly raise needed capital from the sale of her land is doubtful.
3. Conclusion
The Court hereby orders that a distribution be made from the trust of C.M., in two installments, to defray the cost for paving the driveway at her family’s home. The total net distribution shall be in the sum of $24,480.00 and shall be used to pave the driveway at 31 Herschler Road, Oakdale, Connecticut, as described in the GW Estimate (Plaintiffs Ex. 10). The Petitioner shall file a copy of the signed GW contract with the Clerk of the Court. The Finance Department of the Tribe is requested (a) to determine the gross distribution needed so that after the required withholding therefrom for federal and state income taxes, the total net distribution made to Petitioner for paving the driveway will be $24,480; and (b) to file with the Court a summary of its calculation, showing for each installment, the gross distribution, the taxes withheld and the net distribution. The Petitioner shall promptly consult with the Tax and Compliance Manager in the Finance Department of the Tribe regarding the withholding for federal and state income taxes. Both installment payments shall be payable to G.W. Paving and Susan Wendy Meehan; and they shall be paid as follows:
1. The first installment payment in the net amount of $12,240.00 shall be paid promptly after the Finance Department (a) is notified by the Clerk of the Court that the GW contract has been signed; and (b) determines the required taxes to be withheld from the gross distribution, for federal and state income taxes;
2. The second installment, in the net amount of $12,240.00, shall require further order of the Court before payment. Upon satisfactory completion of the driveway pavement, the Petitioner shall notify the Court in writing that such work has been satisfactorily completed and request payment of the second installment. The Court will thereafter issue a supplemental order for payment of the second installment.

. Tribal Resolution No. 2008-26 provides in part, as follows: "... the Tribal Council hereby directs that a Guardian Ad Litem, at the expense of the Tribe, shall be appointed for the minor tribal children in any matter in which their parents or guardians petition the Tribal Court for an early distribution from their per capita trust."

. Tribal Resolution No. 2008-36 provides in part, as follows: "... if the Tribal Court orders an early distribution from a minor's per capita the Guardian Ad Litem shall make a recommendation to the Mohegan Tribal Court regarding the manner in which the funds be disbursed."

. Petitioner indicated that the long term care policy would provide sixty (60) months of skilled nursing care.